# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-1997

UNITED STATES OF AMERICA

v.

DARRELL DEVONISH,
Appellant

———————————————

Appeal from U.S. District Court, M.D. Pa.
Judge Jennifer P. Wilson, No. 1:23-cr-00113-001

Before: RESTREPO, MATEY, and FREEMAN, *Circuit Judges*
Argued Mar. 18, 2026;
Decided Jul. 7, 2026

———————————————

NONPRECEDENTIAL OPINION[*]

MATEY, *Circuit Judge*. Darrell Devonish used a charitable organization to extract large sums of government dollars for himself, not to feed impoverished children as promised. But after pleading guilty to his fraud, Devonish pivoted and insisted his misrepresentations skirted the enhancement for charitable fraud in the Sentencing Guidelines. We disagree and will affirm the District Court's sentence.

**I.**

The Food and Nutrition Service ("FNS"), an agency of the United States Department of Agriculture, administers the Summer Food Service Program providing children in low-income areas nutritious meals outside the school year. Another initiative, the Child

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

and Adult Care Food Program, supports meals for after-school activities. FNS disburses these federal funds to state-approved providers, who pass along the money to sponsoring organizations, who deliver the meals.

Darrell Devonish decided to take from the common good for his own good and so formed a "non-profit corporation" called Rebuilding Better Communities ("RBC"), which applied to the Pennsylvania Department of Education ("PADOE") to be a sponsoring organization.[1] Devonish's application was approved, and over the next three years, RBC received reimbursements from PADOE totaling $1,074,328.45 for meals it claimed to provide.

But nearly all of the purported altruism—some 80%—was based on Devonish's fraudulent billing for meals that were never delivered, or food that lacked the required nutritional basis. To cover up the scheme, Devonish instructed RBC personnel to fabricate records, inflate distribution numbers, and destroy receipts. All told, Devonish's fraud amassed $883,518.33 for lavish personal gain.[2] PADOE eventually uncovered the charade, and Devonish pleaded guilty to one count of wire fraud under 18 U.S.C. § 1343 and one count of illegal monetary transactions under 18 U.S.C. § 1957.

At Devonish's sentencing, the United States argued for the enhancement in U.S.S.G. § 2B1.1(b)(9)(A), which is applicable when "[t]he offense involved . . . a misrepresentation

---

[1] In his allocution, Devonish said he started RBC to feed kids but also to help himself and his family, and he acknowledged fault for things going "awry." *See* App. 80.

[2] For instance, he spent over $175,000 on jewelry, more than $45,000 in payments on a Mercedes and a Jeep Wrangler, some $75,000 in clothing and cosmetics, $12,000 on liquor, and over $100,000 on entertainment, travel, and dining. He also withdrew another $220,000 in cash at ATMs.

that the defendant was acting on behalf of a charitable . . . organization." The District Court agreed the enhancement covered Devonish's conduct, justifying the two-level increase, and sentenced him to 41 months' total imprisonment for both counts.[3]

## II.

To interpret the best meaning of a Sentencing Guideline, courts "carefully consider[] the [Guideline's] text, structure, history, and purpose," *United States v. Mercado*, 81 F.4th 352, 356 (3d Cir. 2023), including consulting applicable *background* commentary, *United States v. Adair*, 38 F.4th 341, 349 n.3 (3d Cir. 2022). Only where that inquiry proves entirely unable to produce an ordinary understanding of intent can courts turn to relevant *interpretative* commentary that "implicate[s] [the Commission's] substantive expertise" and "reflect[s] fair and considered judgment." *Mercado*, 81 F.4th at 356.

Devonish argues § 2B1.1(b)(9)(A) does not apply because he did not misrepresent RBC's charitable status,[4] nor his authority to act on behalf of RBC. This largely picks up on pieces of the Tenth Circuit's opinion in *United States v. Frazier*, which acknowledged

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. §§ 3742(a) and (e). "We review the District Court's factual findings relevant to the Guidelines for clear error and exercise plenary review over the District Court's interpretation of the Guidelines." *United States v. West*, 643 F.3d 102, 105 (3d Cir. 2011) (citation omitted).

[4] The District Court found that "RBC is, in fact, was, in fact, a genuine charitable organization." App. 76. That is debatable, as merely filing for non-profit status does not necessarily create a charity. *See* 26 U.S.C. § 501(c)(3) (emphases added) (defining a tax-exempt entity to include, amongst other things, one "organized and *operated exclusively* for . . . charitable . . . purposes" where "*no part* of the net earnings . . . inures to the benefit of any . . . *individual*"); *IHC Health Plans, Inc. v. Comm'r*, 325 F.3d 1188, 1195 (10th Cir. 2003) ("In defining 'charitable,' our analysis must focus on whether [an organization's] activities conferred a *public* benefit."). But as there is no challenge to this factual finding, we accept the characterization.

3

that the enhancement's plain text applies if "a defendant . . . either falsely claims . . . that he has the capacity to act as an agent or employee of [a charitable] organization," or if he "claims he works on behalf of a *non-existent* charitable organization." 53 F.3d 1105, 1112–13 (10th Cir. 1995). But *Frazier* also acknowledged that the enhancement's plain text would appear to apply to a defendant who "falsely claims to act 'in the interest or aid of' the organization," which is exactly what Devonish did. *Id.* at 1112. Devonish submitted at least one form requesting reimbursement for non-existent meals, and later pocketed the money for himself. So he misrepresented to the government that he was working in the interest or aid of RBC, when in fact he was working to aid his own financial interest. Even if some small number of his reimbursements satisfied the program guidelines, much more of his conduct did not, and his offense "*involved* . . . a misrepresentation that the defendant was acting on behalf of a charitable . . . organization." U.S.S.G. § 2B1.1(b)(9)(A) (emphasis added).[5]

\* \* \*

For these reasons we will AFFIRM the District Court's judgment.

Alexandria J. Lappas
Office of the Federal Public Defender
Middle District of Pennsylvania
Interim Federal Public Defender

---

[5] Devonish insists that § 2B1.1's commentary limits the enhancement to offenses that "exploit victims' charitable impulses." U.S.S.G. § 2B1.1 cmt. background. But we need not reach for background principles given the text and context of § 2B1.1 is sufficiently firm.

Frederick W. Ulrich
Office of the Federal Public Defender
Middle District of Pennsylvania
Asst. Federal Public Defender

Tammy L. Taylor
Office of the Federal Public Defender
Middle District of Pennsylvania
Staff Attorney

Cristin D. Lantz [**ARGUED**]
Office of the Federal Public Defender
Middle District of Pennsylvania
Staff Attorney
        *Counsel for Appellant*

John C. Gurganus
United States Attorney's Office
Middle District of Pennsylvania
Acting United States Attorney

Patrick J. Bannon [**ARGUED**]
Carlo D. Marchioli
United States Attorney's Office
Middle District of Pennsylvania
Assistant United States Attorney
        *Counsel for Appellee*